United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 12, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-51118

_____

THE SCOTT FETZER CO., a Delaware Corporation,

Plaintiff - Counter Defendant -
Appellant - Cross-Appellee,

versus

HOUSE OF VACUUMS INC., a Texas Corporation,

Defendant - Counter Claimant -
Appellee - Cross-Appellant.

--------------------
Appeals from the United States District Court
for the Western District of Texas, San Antonio
--------------------

Before SMITH, BENAVIDES, and PICKERING, Circuit Judges.

BENAVIDES, Circuit Judge:

The Scott Fetzer Company owns the Kirby Company, a manufacturer of vacuum cleaners, as well as the KIRBY trademark and service marks. House of Vacuums is an independent vacuum cleaner sales and repair shop located in San Antonio. Scott Fetzer sued House of Vacuums for unfair competition, trademark infringement, and trademark dilution after House of Vacuums used the KIRBY mark in an advertisement. The district court granted summary judgment in favor of House of Vacuums on Scott Fetzer's unfair competition and trademark claims but refused to award attorneys' fees to House of Vacuums.

We agree with the district court that no reasonable jury could conclude that House of Vacuums misappropriated the KIRBY mark in any way. We also conclude that the district court did not abuse its discretion in denying attorneys' fees to House of Vacuums. Therefore, we affirm the judgment of the district court.

### I. Background

House of Vacuums sells new, used, and reconditioned vacuum cleaners of several brands. Earl Farmer, the owner and sole employee, repairs all types of vacuum cleaners. House of Vacuums is not an authorized Kirby distributor or service center, but Mr. Farmer typically repairs at least one Kirby vacuum cleaner per day and occasionally sells new and slightly used Kirby vacuum cleaners that he has acquired from Kirby distributors or through trade-ins.

Scott Fetzer and House of Vacuums first clashed in 1987, when Scott Fetzer complained to Mr. Farmer about a House of Vacuums yellow pages ad that depicted, among other brand logos, the KIRBY logo. Following an exchange of letters, Scott Fetzer sent Mr. Farmer a proposed agreement. The agreement provided that Mr. Farmer's advertisement could use the word "Kirby" (but not the KIRBY logo) so long as the ad did not create an impression of authorization, affiliation, or sponsorship. The agreement also provided several examples of acceptable use of the KIRBY mark. Mr. Farmer neither signed nor returned the agreement but claims to have resolved the dispute informally through phone calls to Scott Fetzer

representatives.   In any event, Scott Fetzer took no further action.

Mr. Farmer reviewed the examples of acceptable use listed by Scott Fetzer in the proposed agreement and created a yellow pages ad that, with insignificant changes, has run ever since.  The 2001 version of that ad is the subject of the current litigation.  The ad begins with the name "HOUSE OF VACUUMS" in large letters.  Below this title, two lines--"new • used • rebuilt" and "SALES • SERVICE • PARTS • SUPPLIES"--bracket a list of thirteen different vacuum cleaner brand names, one of which is "Kirby."   A cloud encapsulating the words "One Day Service All Makes & Models" hovers to the right side of this listing, and a picture of a nondescript vacuum cleaner sits to the left side of the listing.   The ad concludes with a promise of "Free Estimates," a telephone number, an address, and a rudimentary map.



In January 2002, Scott Fetzer sent a letter objecting to the 2001 yellow pages ad. The letter demanded that House of Vacuums cease and desist all use of the KIRBY mark and disconnect its telephone number. Mr. Farmer refused these demands and reminded Scott Fetzer's attorneys of the parties' previous interactions. Neither party yielded.

In August 2002, Scott Fetzer filed a federal suit alleging, under Texas and federal law, trademark infringement, unfair competition, and trademark dilution. House of Vacuums moved unsuccessfully to dismiss, then filed a counterclaim seeking a declaration that House of Vacuums had not infringed or diluted the KIRBY mark; that laches, estoppel, waiver, and acquiescence barred Scott Fetzer's claims; and that Scott Fetzer abandoned the KIRBY mark. House of Vacuums moved for summary judgment, and Scott Fetzer moved for partial summary judgment solely on the issue of consumer confusion, an issue relevant to trademark infringement.

The district court granted summary judgment to House of Vacuums on all Scott Fetzer's claims and denied Scott Fetzer's cross-motion. With respect to Scott Fetzer's unfair competition and trademark infringement claims, the district court ruled that the ad did not infringe the KIRBY mark because the ad did not create a likelihood of consumer confusion. With respect to Scott Fetzer's trademark dilution claims, the district court ruled that both federal and Texas law require a showing of actual dilution and that Scott Fetzer had made no such showing. Finally, the district

court found that Scott Fetzer did not bring its claims in bad faith and therefore refused to award attorneys' fees to House of Vacuums.

Scott Fetzer appealed the grant of summary judgment in favor of House of Vacuums and the denial of its own motion for partial summary judgment. House of Vacuums cross-appealed the denial of attorneys' fees.

## II. Trademark Infringement, Unfair Competition, and Trademark Dilution

We turn first to the district court's grant of summary judgment, which we review de novo, *New Orleans Assets, L.L.C. v. Woodward*, 363 F.3d 372, 374 (5th Cir. 2004). We grant summary judgment only if the case presents no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We must consider the evidence in the light most favorable to the nonmovant, but if no reasonable juror could find for the nonmovant, then summary judgment is warranted. *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 274 (5th Cir. 2002). Because we conclude that no reasonable juror could find for Scott Fetzer on any of its claims, we affirm the district court's grant of summary judgment.[1]

---

[1] In the last paragraph of its brief, House of Vacuums tosses in a cursory argument that we could rely on the equitable defenses of waiver, laches, or estoppel to affirm the district court's grant of summary judgment. House of Vacuums has not cited a single legal authority in support of these defenses. As such, House of Vacuums has not adequately briefed these arguments and we will not consider them. *See* Fed. R. App. P. 28(a)(9), (b); *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 466 n.14 (5th Cir. 2003).

## A. Infringement and Unfair Competition

To prove trademark infringement and unfair competition under federal law, Scott Fetzer must show that the use of the KIRBY mark by House of Vacuums is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of House of Vacuums's products or services. *See* 15 U.S.C.A. § 1114(1) (West 1997 & Supp. 2004); *id.* § 1125(a) (West 1998); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). A "likelihood of confusion" means that confusion is not just possible, but probable. *Westchester*, 214 F.3d at 663-64. The likelihood of confusion standard also governs Scott Fetzer's claims for trademark infringement and unfair competition under Texas law. *See id.* at 663-64 n.1; *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998).

Scott Fetzer's complaints focus on the 2001 House of Vacuums yellow pages ad. Scott Fetzer argues that the words "NEW" and "Kirby," though not juxtaposed, suggest that House of Vacuums sells new Kirby vacuum cleaners. According to Scott Fetzer, this suggestion is likely to confuse consumers in two ways. First, Scott Fetzer asserts that House of Vacuums cannot truthfully claim to sell new Kirby vacuum cleaners because only Kirby dealers are authorized to sell new Kirby vacuum cleaners. Second, Scott Fetzer

alleges that the yellow pages ad will create a false impression of affiliation or sponsorship. Neither argument withstands scrutiny.

House of Vacuums may use the KIRBY mark to advertise that it sells new KIRBY vacuum cleaners. Independent dealers and repair shops may use a mark to advertise truthfully that they sell or repair certain branded products so long as the advertisement does not suggest affiliation with or endorsement by the markholder. *See Trail Chevrolet, Inc. v. Gen. Motors Corp.*, 381 F.2d 353, 354 (5th Cir. 1967) (per curiam); *accord Volkswagenwerk Aktiengesellshaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969); *see generally* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:43 (4th ed. 2003).[2] For all its bluster about authorization, Scott Fetzer admits that new Kirby vacuum cleaners sometimes reach independent dealers. These leaks in Scott Fetzer's distribution chain are well documented. *See Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 552-53 (8th Cir. 1996). In light of this admission, Scott Fetzer cannot rebut summary judgment evidence showing that House of Vacuums sometimes obtains new Kirby vacuum cleaners, albeit without authorization, and resells them to customers.[3]

---

[2] House of Vacuums calls this principle "fair use," but fair use is a different concept. Fair use "allows a party to use its own name or a descriptive term or device in the name or term's descriptive sense to describe its own goods or services." *Pebble Beach v. Tour 18 I Ltd.*, 155 F.3d 526, 545 n.12 (5th Cir. 1998). Fair use is protected even if confusion is likely. *Id.*

[3] These unauthorized sales do not violate any trademark law. Standing alone, sales of genuine trademarked products outside the confines of an authorized distribution system do not

(continued...)

Because House of Vacuums sells new Kirby vacuum cleaners, House of Vacuums may use the KIRBY mark to advertise that fact so long as the advertisement does not suggest affiliation with or endorsement by Scott Fetzer.

The critical question is whether the advertisement suggests affiliation or endorsement. In assessing whether use of a mark creates a likelihood of confusion as to affiliation or endorsement, we consider the "digits of confusion," a list of factors that tend to prove or to disprove that consumer confusion is likely. *Westchester*, 214 F.3d at 664. Those factors are: (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *Id.*

The digits are a flexible and nonexhaustive list. *See id.* They do not apply mechanically to every case and can serve only as guides, not as an exact calculus. *See Pebble Beach Co. v. Tour 18*

---

³(...continued)
give rise to a cause of action for trademark infringement under federal or Texas law. *See Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 593 (5th Cir. 1993); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 735-36 (Tex. App.—Austin 2000, pet. denied). Sales of trademarked products without authorization may constitute trademark infringement if those products are not genuine, i.e., the product harbors some defect (or potential defect) that customers would be unable to detect. *See Matrix*, 988 F.2d 590-91; *John Paul Mitchell*, 17 S.W.3d at 735-36. However, Scott Fetzer has not developed such a theory of infringement, and we will not construct one sua sponte.

*I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998). For example, consider two yellow pages advertisements by independent vacuum dealers, one reading "Your Kirby Headquarters" and the other reading "Sales & Repairs of Kirby Vacuums (not authorized by Kirby)." A court applying the digits without regard to context would find that a majority of the digits indicate confusion in both cases. The KIRBY mark is strong and arbitrary and would thus indicate confusion under the first digit. *See Elvis*, 141 F.3d at 201. The KIRBY marks used in the ads would be not just similar but identical to Scott Fetzer's KIRBY mark; this similarity would indicate confusion under the second digit, *see id.* The independent dealers' products and services would be identical with those offered by KIRBY-authorized centers; this similarity would indicate confusion under the third digit, *see id.* at 202. The group of consumers seeking to purchase Kirby vacuum cleaners from the independent dealers would overlap almost completely with the group of consumers seeking to purchase Kirby vacuum cleaners from authorized dealers; this similarity would indicate confusion under the fourth digit, *see Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985). Yet while the first advertisement would plainly create a likelihood of confusion as to affiliation, the second one just as plainly would not.

This example illustrates two important aspects of our traditional likelihood of confusion analysis. First, we must consider the application of each digit in light of the specific

circumstances of the case; otherwise, we risk inadvertently lowering the standard of confusion. *See Lyons P'ship v. Giannoulas*, 179 F.3d 384, 389-90 (5th Cir. 1999) (holding that court must consider application of digits in light of parody claim even when evaluating a motion for summary judgment); *Pebble Beach*, 155 F.3d at 547 (holding that court must consider application of digits in light of comparative advertising claim). Whenever an independent dealer advertises that it sells a certain marked product in competition with authorized dealers, several of the digits will appear to indicate confusion even if no confusion is likely. *Cf. Lyons*, 179 F.3d at 389 (noting that first digit would point to confusion in any parody case); *Pebble Beach*, 155 F.3d at 546-47 (recognizing that a number of digits would point to confusion in any comparative advertising case). Therefore, we must consider the application of each digit in light of the fact that an independent dealer is advertising marked products.

Second, we must "consider the marks in the context that a customer perceives them in the marketplace, which includes their presentation in advertisements." *Elvis*, 141 F.3d at 197. Context is especially critical in a case like this one. *Cf. Trail Chevrolet*, 381 F.2d at 354 (forbidding use of the CHEVROLET mark as part of the defendant's trade name but allowing the defendant to state that it sold and repaired CHEVROLET cars). Prominent and pervasive use of a mark will suggest affiliation, but mere reference to a marked product will not. *See Pebble Beach*, 155 F.3d

at 546, 552.  Therefore, in addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis.

With these principles in mind, we turn to Scott Fetzer's proffered evidence of infringement, which focuses on the second, sixth, and seventh digits.  Even viewed in the light most favorable to Scott Fetzer, this evidence is not sufficient to permit a reasonable jury to find a likelihood of confusion as to affiliation.

Scott Fetzer first argues that the second digit (similarity between the marks) supports a finding of likely confusion.  The House of Vacuums ad uses the KIRBY mark, so the marks at issue are more than similar--they are practically identical.[4]  As suggested above, however, the second digit proves little about likelihood of confusion when, as in this case, an independent dealer is using a mark to advertise sales and repairs of the marked product.

A review of the ad, in fact, can only hurt Scott Fetzer's case.  The context in which the KIRBY mark appears significantly reduces any chance of confusion.  The word "Kirby" is fifth in a list of thirteen brand names and is not especially prominent.  Therefore, consumers are much less likely to conclude that House of

---

[4]     The district court erred in holding that the KIRBY mark and "Kirby" spelled in plain letters are different in a meaningful way.  That a defendant has printed the mark in plain letters instead of a stylized typeface does not necessarily demonstrate lack of similarity.  *See Fuji*, 754 F.2d at 597.

Vacuums is affiliated with or approved by Kirby than they would be were the KIRBY mark emphasized in some way.

Scott Fetzer next argues that House of Vacuums intended to confuse consumers, an inquiry relevant under the sixth digit, *Elvis*, 141 F.3d at 203. Scott Fetzer contends that the district court should have presumed intent to confuse because House of Vacuums used a mark it knew to be owned by Scott Fetzer. In some situations, "[a] showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intended to cause public confusion." *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151 n.2 (5th Cir. 1985). This presumption of bad intent is unreasonable when an independent dealer advertises its sales or repairs of a branded product. In such cases, a defendant will always use the plaintiff's mark with knowledge that the plaintiff owns the mark.

Scott Fetzer also claims to have direct evidence of intent to confuse because Mr. Farmer admitted that he intended to attract the attention of customers interested in purchasing or repairing Kirby vacuum cleaners. According to Scott Fetzer, these customers would otherwise have patronized Kirby-authorized dealers and service centers. Intent to compete, however, is not tantamount to intent to confuse. House of Vacuums has evinced no intent to confuse, so the sixth digit does not support a finding of a likelihood of confusion.

Finally, Scott Fetzer claims to have evidence of actual confusion. To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion, *see Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992), or consumer surveys, *see Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980). Neither Scott Fetzer's anecdotal evidence nor its survey evidence could reasonably support a finding of infringement.

Scott Fetzer points to several anecdotes that purportedly indicate consumer confusion as to the affiliation of House of Vacuums. For example, Mr. Farmer's deposition and several of Scott Fetzer's affidavits recount instances in which customers have said they thought House of Vacuums was an authorized Kirby dealer or an authorized Kirby repair shop. The problem with these anecdotes, however, is that no competent evidence connects them to any representation by House of Vacuums. The record indicates that in many of these instances, customers assumed affiliation based on the fact that House of Vacuums sells--with the approval of Scott Fetzer--KIRBY-brand rug shampoos and like products. To prove infringement, Scott Fetzer must ultimately prove that a misleading representation by House of Vacuums, as opposed to some other source, caused a likelihood of confusion. *See Westchester*, 214 F.3d at 664 (requiring that defendant's use of mark cause confusion); *Pebble Beach*, 155 F.3d at 536 (same); *cf. Sebastian Int'l v. Longs Drugs Stores Corp.*, 53 F.3d 1073, 1077 (9th Cir.

1993) (refusing to hold unauthorized seller liable for confusion engendered by manufacturer's own practices). Standing alone, Scott Fetzer's anecdotes are not sufficient to permit a reasonable jury to infer that House of Vacuums caused the cited instances of confusion.[5]

The only evidence purporting to link the yellow pages ad to consumer confusion is a survey conducted at Scott Fetzer's behest. The expert who conducted the survey used Scott Fetzer's customer lists to construct a survey universe consisting entirely of San Antonio residents who own a Kirby vacuum cleaner. The surveyors showed respondents the yellow pages ad in question, then asked, "Looking at this ad, would you say this company is in any way affiliated with, connected with, sponsored by, associated with or authorized by the Kirby Company?" Fifty-seven percent of survey participants answered in the affirmative.[6]

---

[5] Scott Fetzer also points to several instances in which customers sought to purchase new Kirby vacuum cleaners at House of Vacuums. These anecdotes also evince no link to the yellow pages ad. Furthermore, they do not speak to any kind of confusion; House of Vacuums does sell new Kirby vacuum cleaners on occasion.

[6] The surveyors also asked, "Looking at this same ad, would you expect that you would be able to buy a new Kirby vacuum cleaner from House of Vacuums?" Eighty-seven percent of survey participants answered in the affirmative. This question does not speak to any sort of confusion. Some consumers believe that House of Vacuums sells new Kirby vacuum cleaners, and House of Vacuums does occasionally sell new Kirby vacuum cleaners. Furthermore, as discussed below, the restricted survey universe would preclude a jury from regarding the survey as probative evidence of confusion among potential purchasers of new KIRBY vacuum cleaners.

We agree with the district court that no reasonable jury could regard the survey presented by Scott Fetzer as evidence of confusion. In assessing the validity of a survey, we look to two factors: first, the manner of conducting the survey, including especially the adequacy of the universe; and second, the way in which participants are questioned. *Exxon*, 628 F.2d at 506-07.

The universe selected by Scott Fetzer's expert severely limits the probative value of the survey's results. For a survey to be valid, "the persons interviewed must adequately represent the opinions which are relevant to the litigation." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980). In an infringement action, "the appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Id.* The universe in Scott Fetzer's survey consisted entirely of persons who purchased Kirby vacuum cleaners through Scott Fetzer. This group is uniquely familiar with Scott Fetzer's marketing and distribution techniques. Thus, the survey says nothing about the ad's effect on the class of potential consumers of new Kirby vacuum cleaners, a class that includes a large proportion of persons who have not yet purchased a Kirby. The survey might reveal slightly more about the ad's effect on the class of potential purchasers of repairs for Kirby vacuum cleaners, a class which presumably includes a high proportion of Kirby vacuum cleaner owners. Even with respect to this class, however, the universe is suspiciously underinclusive;

at least some potential purchasers of repairs will have acquired their Kirby vacuum cleaners second-hand and therefore will not appear on Scott Fetzer's lists.

In any event, flaws in the questions asked prevent the survey from proving confusion even among potential consumers of Kirby repairs. First, the surveyors asked whether House of Vacuums "is in any way affiliated with, connected with, sponsored by, associated with or authorized by" Kirby. The use of the phrase "in any way" prodded survey participants to search for any connection, no matter how attenuated, between the two companies. Second, the survey question suggested a connection between House of Vacuums and Kirby instead of permitting participants to make their own associations. A survey question that begs its answer by suggesting a link between plaintiff and defendant cannot be a true indicator of the likelihood of consumer confusion. *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984).

Usually, methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility. *See C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1055 n.10 (5th Cir. 1981) (dictum); *Holiday Inns, Inc. v. Holiday Out In Am.*, 481 F.2d 445, 447 (5th Cir. 1973). Scott Fetzer argues that its presentation of survey evidence precludes summary judgment because a court may not weigh evidence or make credibility determinations when reviewing a motion for summary judgment, *see Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 456-57

(5th Cir. 2003). In some cases, however, serious flaws in a survey will make any reliance on that survey unreasonable. *See Bank of Tex. v. Commerce Southwest, Inc.*, 741 F.2d 785, 789 (5th Cir. 1984) (upholding judgment notwithstanding the verdict even though verdict was supported by survey evidence). Otherwise, any survey, no matter how tendentious, would force the parties to trial. Thus, although minor methodological flaws will affect weight rather than admissibility, a survey can be "so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion." *Universal*, 746 F.2d at 118.

No reasonable jury could view the proffered survey as evidence of confusion among relevant consumers. The survey thus debunked, nothing links Scott Fetzer's anecdotal evidence of confusion to the yellow pages ad at issue, and in the absence of any reasonably credible anecdotal or survey evidence, Scott Fezter lacks evidence of actual confusion.

In sum, no reasonable jury could conclude that the House of Vacuums yellow pages ad creates a likelihood of confusion. Therefore, House of Vacuums is entitled to summary judgment on Scott Fetzer's claims of trademark infringement and unfair competition.

## B. Dilution

Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product.

*See* 15 U.S.C.A. § 1127 (West Supp. 2004); *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied).[7] Dilution may occur through blurring or tarnishing. *Westchester*, 214 F.3d at 670 n.12. Blurring involves a diminution in the uniqueness or individuality of a mark because of its use on unrelated goods. *See id.* *See generally* 4 McCarthy, *supra*, § 24:68. Tarnishing occurs when a trademark is "'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Hormel Foods Corp. v. Jim Henson Productions*, 73 F.3d 497, 507 (2d Cir. 1996) (quoting *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)). *See generally* 4 McCarthy, *supra*, § 24:69.[8]

---

[7] The Federal Trademark Dilution Act ("FTDA") bars "another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C.A. § 1125(c)(1) (West 1998). Texas's anti-dilution statute provides relief to owners of "distinctive" marks. *See Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex App.—Dallas 2001, no pet.). House of Vacuums does not contest that the KIRBY mark became famous before appearing in the House of Vacuums ad. Nor does House of Vacuums dispute that the KIRBY mark is distinctive. Therefore, we will not analyze these statutory requirements for purposes of this case. *Cf. Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 432 (2003).

[8] In its most recent analysis of dilution law, the Supreme Court cast doubt on whether the FTDA creates a cause of action for tarnishing. *Moseley*, 537 U.S. at 432. The Court
(continued...)

Scott Fetzer alludes to both blurring and tarnishing, but its theory of dilution is essentially one of tarnishing. When authorized service centers rebuild a Kirby vacuum cleaner, they use all new parts. House of Vacuums, however, sometimes uses used parts. This practice, says Scott Fetzer, makes Kirby vacuum cleaners rebuilt by House of Vacuums inherently inferior to Kirby vacuum cleaners rebuilt by authorized service centers. Scott Fetzer complains that customers will link the KIRBY mark to these purportedly inferior products.

Scott Fetzer's theory of tarnishing is untenable, and its dilution claims fail as a matter of law.[9] Trademark law does not

---

[8](...continued)
noted that tarnishing "was prominent in litigation brought under state antidilution statutes" and "was mentioned in the [federal] legislative history," but the Court questioned whether the statutory text embraced tarnishing. *Id.* The Court observed that "the contrast between the state statutes, which expressly refer to both 'injury to business reputation' and to 'dilution of the distinctive quality of a trade name or trademark,' and the federal statute which refers only to the latter, arguably supports a narrower reading of the FTDA." *Id.; cf., e.g.*, Tex. Bus. & Com. Code § 16.29 (Vernon 2002) (making actionable "an act likely to injure a business reputation or to dilute the distinctive quality of a mark"). We have previously assumed that tarnishing is actionable under federal law, *see, e.g.*, *Westchester*, 214 F.3d at 670 n.12, and House of Vacuums has advanced no argument that it is not. Therefore, we will continue our previous assumption for purposes of this case. Even if this assumption proves incorrect, the outcome of this case would be the same: Scott Fetzer's federal dilution claims fail as a matter of law.

[9] Although the district court's conclusion was correct, the district court's explication of federal and Texas law was erroneous in two respects.
First, the district court erred in describing the showing necessary under the FTDA. The district court correctly noted
(continued...)

entitle markholders to control the aftermarket in marked products. *Ty, Inc. v. Perryman*, 306 F.3d 509, 513 (7th Cir. 2002). Granted, consumers will naturally associate a used, repaired, or rebuilt product with the mark it bears. As a quick glance at any classifieds section shows, reference to a used or repaired item's trademark will often be the only feasible way to announce the item's availability for sale. *See id.* at 512. Moreover, consumers will often base their opinion of a product on the product's performance after months or years of use and periodic repairs. These phenomena are necessary and unremarkable offshoots of a robust aftermarket in trademarked products, not evidence of dilution.

Concluding otherwise would convert anti-dilution laws into a tool for manufacturers to police independent repair shops and second-hand sales. Scott Fetzer's theory would allow a markholder

---

[9](...continued)
that to prevail on its federal dilution claim, Scott Fetzer must show actual dilution, not just a likelihood of dilution. *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003). But the district court erred when it faulted Scott Fetzer for not offering evidence of lost profits or other damages. The requirement that a plaintiff show actual dilution "does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved." *Id.*

Second, the district court misstated Scott Fetzer's burden under Texas anti-dilution law. The district court erroneously held that the Texas anti-dilution statute, Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2002), requires a showing of actual dilution. In contrast to the FTDA, Texas anti-dilution law requires that the plaintiff establish "an act *likely* to injure a business reputation or to dilute the distinctive quality of a mark." *Id.* (emphasis added); *see Westchester*, 214 F.3d at 670 & n.16.

to cry dilution every time a resold or repaired product reflected poorly on the mark it bore. Under this theory, any rusted-out Impala "for sale" on blocks in a front yard would give rise to a cause of action for diluting the CHEVROLET mark. We refuse to encourage anti-dilution law to metastasize in this manner.

Thus, the district court's conclusion was correct. House of Vacuums is entitled to summary judgment on Scott Fetzer's claims of dilution.

### III. Attorneys' Fees

On cross-appeal, House of Vacuums contests the district court's refusal to award attorneys' fees. The Lanham Act permits a court to award reasonable attorneys' fees to a prevailing party "in exceptional cases." 15 U.S.C.A. § 1117(a) (West Supp. 2004). We review a decision to award attorneys' fees under § 1117 for abuse of discretion and the district court's finding as to whether the case is exceptional for clear error. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 528 (5th Cir. 2002).

To recover attorneys' fees, "[t]he prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence." *Id.* at 526. To demonstrate that a case is exceptional, in turn, the defendant must show that the plaintiff brought the case in bad faith. *Id.* at 527-528 & n.12; *Fuji*, 754 F.2d at 602. A district court should consider the objective merits of the suit in determining whether the plaintiff acted in bad faith. *Procter & Gamble*, 280 F.3d at 527. However, a party has

not acted in bad faith simply by predicating its legal claim on a controversial and unsettled legal theory. *Id.* at 531-32.

The district court did not clearly err or abuse its discretion. Scott Fetzer's infringement claims do not withstand careful scrutiny, but they are not so implausible as to necessitate an inference of bad faith. Likewise, Scott Fetzer's dilution claims are novel and expansive but not so outlandish that they could not have been brought in good faith.

House of Vacuums complains that a large, well funded corporation has sued a small, one-man shop. However, a district court cannot consider the parties' relative economic positions when determining whether a case is exceptional. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). Therefore, we affirm the district court's denial of attorneys' fees.

## IV. Conclusion

The district court correctly concluded that House of Vacuums was entitled to summary judgment on Scott Fetzer's claims of unfair competition, trademark infringement, and trademark dilution. Furthermore, the district court did not abuse its discretion by denying attorneys' fees to House of Vacuums.

AFFIRMED.