REVISED JUNE 24, 2011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2011

Lyle W. Cayce
Clerk

No. 10-50724

HONESTECH, INCORPORATED,

Plaintiff - Appellant

v.

SONIC SOLUTIONS,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:08-CV-922

Before JOLLY, HAYNES, and GRAVES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

In 2005, Honestech Incorporated began selling a product in the United States -- VHS TO DVD ("VTD") -- that allows users to convert media from analog format to digital format. Although Honestech never formally applied for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

trademark protection, it attached a trademark insignia to its VTD label in April 2007. In July 2008, Sonic Solutions began marketing a competing product, which it labeled "Easy VHS TO DVD" ("EVTD").

On December 23, 2008, Honestech filed a trademark infringement suit against Sonic. Sonic hired Dr. Bruce Isaacson to conduct a survey evaluating whether the VTD mark had acquired secondary meaning; his survey concluded that the mark had no secondary meaning. On November 2, 2009, Honestech moved to strike Isaacson's survey, arguing that it was methodologically flawed. The district court denied Honestech's motion.

At trial, Honestech presented circumstantial evidence of secondary meaning, and Sonic presented Dr. Isaacson's testimony. The jury found in Sonic's favor. Honestech asked the district court to grant a new trial, arguing that the improper admission of Isaacson's survey had affected its substantial rights. The district court denied the motion.

Honestech appeals; its sole argument is that the district court abused its discretion in admitting Isaacson's survey. Indeed, at oral argument it conceded that we should affirm if we determine that the survey was properly admitted.[1] We hold that the survey was admissible and we therefore AFFIRM.

## I.

This court reviews a trial court's decision regarding the admissibility of expert testimony under an abuse of discretion standard, and it will reverse the district court only if "the ruling is manifestly erroneous." Guy v. Crown Equip. Corp., 394 F.3d 320, 324-25 (5th Cir. 2004) (internal citations omitted).

---

[1] Although Honestech notes that at least one circuit has held that intentional copying, standing alone, "establishes a prima facie case of secondary meaning[,]" see Larsen v. Terk Techs. Corp., 151 F.3d 140, 148-49 (4th Cir. 1998), it conceded at oral argument that its appeal hinges on whether Isaacson's survey was admissible. Stated differently, Honestech does not specifically ask us to reverse the jury verdict based solely on Sonic's intent, nor did it ask the district court to instruct the jury that intent is dispositive.

"Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." Id. (internal marks and citation omitted). "If it is found that the district court abused its discretion . . . this court must then consider whether the error was harmless, affirming the judgment unless the ruling affected a substantial right of the complaining party." Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 561 (5th Cir. 2004).

In urging us to hold that the district court abused its discretion in admitting the survey, Honestech's arguments, broadly stated, are two.

Honestech first argues that Isaacson's methodology was flawed. It contends that he failed to conduct appropriate market research, and that as a result his survey universe was over inclusive. Honestech argues that the appropriate universe consisted solely of mature males who had previously purchased analog to digital products or who, in response to questioning, indicated that they were interested in purchasing one. It further contends -- but only in the factual statement and argument summary of its brief -- that Isaacson's results were unreliable because his questions did not control for the fact that Sonic had released its EVTD line.

Honestech's second argument is that the district court abdicated its gatekeeping function. Honestech complains that the district court seemed to say that it routinely ignores the substance of Daubert motions, and it contends that the court perpetuated this deficient practice here.

## A.

"In assessing the validity of a survey, we look to two factors: first, the manner of conducting the survey, including especially the adequacy of the universe; and second, the way in which participants are questioned." Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 487 (5th Cir. 2004) (internal citation omitted). "In an infringement action, the appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged

infringer's goods or services."  Id. at 487-88 (internal quotation marks and citation omitted).  This standard does not require the surveyor to solicit the responses of past purchasers of the product; indeed, focusing too closely on such individuals renders the survey unreliable.  See Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co., 791 F.2d 423, 427 (5th Cir. 1986).  Finally, the general rule is that "methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility."  Scott Fetzer Co., 381 F.3d at 488.

Honestech's primary point of attack on the survey is the inadequacy of Isaacson's universe.  It argues that Isaacson failed to identify the relevant consumers:  individuals who "ha[d] purchased or intend[ed] to purchase [from] the product category at issue within a contextually appropriate time[ ]frame."[2] Honestech further argues that numerous district courts have deemed it insufficient for a surveyor to identify individuals who "meet certain criteria that make them possible purchasers" without determining "whether they have any interest or willingness to purchase the products at issue[.]"

Honestech also criticizes Isaacson for his failure to control for the release of Sonic's competing EVTD line by asking whether the participants had associated the VTD tag with only one company prior to Sonic's launch of its EVTD line.  Notably, Honestech cites no authority that would have required the district court to exclude the survey on this basis.[3]

---

[2] Honestech insists that focusing on past purchasers would not have skewed the results; in a related vein, it contends that there is no evidence suggesting that consumers will purchase an analog-to-digital converter only once.  To understand this argument, we need to briefly revisit the district court's order denying Honestech's motion.  The district court noted that "the survey concerned a product likely to be purchased only once in a lifetime, not a product (like pizza, groceries, or car insurance) that is likely to be purchased repeatedly over a consumer's lifetime."  The district court further noted that when this one-time-purchase type of item is at issue, "surveying those who had already bought the product skew[s] the results, . . . ."

[3]  Indeed, it is likely that this argument is inadequately briefed, as it is presented only in Honestech's factual statement and argument summary -- not in its argument section -- and Honestech does not cite any supporting authority.  "[T]he appellant's argument [must] contain

In responding to Honestech's attack on the survey, Sonic counters that the survey was not flawed. It points out that Isaacson limited the universe based on a host of variables, including, inter alia, whether the individual "bought or participated in selecting computers and/or audio and video equipment for their household; "owned . . . at least one device capable of playing analog content;" and "had audio or video material recorded in an analog format . . . ." Sonic further argues that the district court properly determined that past purchasers would at best be able to "identify the product that they had already purchased and used." It urges that this rationale is especially compelling where, as here, the product is one that a consumer will likely purchase only once, and it argues that, for the same reason, it would be unreasonably difficult to locate individuals who had a fixed intent to buy the product. Finally, Sonic reiterates the general rule that "methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." Scott Fetzer Co., 381 F.3d at 488.

We must agree with Sonic. Isaacson's screening questions reflect a reasonable attempt to identify individuals who would be interested in buying the software. At the very least, these questions eliminated individuals that would be unlikely to have any need for the product. Moreover, the district court used common sense in observing that this product is unlike food in that consumers are unlikely to purchase it time and time again. In any event, the district court could reasonably conclude that, under our precedent, surveying consumers who had already purchased the product would skew the results. Sno-Wizard Mfg., Inc., 791 F.2d at 427. Similarly, although Honestech finds fault with Isaacson's failure to pinpoint individuals who intended to buy the product in the future,

---

the reasons he deserves the requested relief with citation to the authorities, statutes and parts of the record relied on." Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993) (emphasis added). "[O]nly the issues presented and argued in the brief are addressed." Id. (emphasis added). We will nevertheless address this argument, because, as we explain, it does not change the outcome of this case.

requiring such exactitude would likely make it impossible to conduct a survey in this case. As stated by the district court: "Without a pattern of . . . purchases, it is difficult to predict future purchases."

In any event, a survey need not be perfect to be admitted into evidence. This court has never required a surveyor to identify with mathematical precision the individuals who have a fixed intent to buy the relevant product; instead, it had merely required that the survey universe reflect a "fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." Scott Fetzer Co., 381 F.3d at 487-88 (emphasis added). Isaacson's survey satisfies this threshold.

Stated differently, methodological errors generally speak to "weight . . . not . . . admissibility." Id. at 488. This rule speaks most directly to Honestech's argument that Isaacson failed properly to account for the presence of two competing products in the marketplace. Although Isaacson's survey might have been more reliable if he had subjected potential participants to the questioning that Honestech prefers, his failure to do so does not render the survey unreliable so as to be excluded from the jury's consideration. Finally, we note that Honestech was permitted to attempt to discredit Dr. Isaacson and his survey through aggressive cross-examination.

### B.

As earlier noted, Honestech contends that the district court failed to follow proper procedure in allowing Isaacson to testify. It correctly notes that district courts are given gate-keeping responsibilities with regard to expert testimony. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). Honestech argues that the district court admitted that it had abdicated this gatekeeping function when it said that it doesn't "have time, with the docket to go through and decide, in the abstract . . . all of the Daubert motions that the Supreme Court has blessed us with because none of them tried lawsuits."

Sonic counters with a different interpretation of the judge's comments: that the district court was merely discouraging Sonic's attorney from introducing into evidence the order permitting Isaacson to testify, and that it therefore emphasized that its order did not endorse the merits of Isaacson's survey. Sonic further urges that the order itself demonstrates the motion was given full and proper consideration because it addresses all of Honestech's admissibility arguments.

On its face, the district court's statement raises some concern. The court seemed to imply that it routinely allows experts to testify without evaluating whether their testimony will be reliable; this, it cannot do. Daubert, 509 U.S. at 598. On the other hand, when viewed in context, the court's statement seems to reflect only a rhetorical flourish. The record shows that Kim Brightwell, who was one of Sonic's trial attorneys, stated that he intended to introduce for the jury's consideration the district court's order admitting Isaacson's survey. In response, the district court cautioned Mr. Brightwell that his proposal may not be so bright: "I don't think I would do that because then, I would instruct the jury that all I said was he would be able to present testimony to the jury. I did not find as a matter of law based on the briefs that he was unqualified." Only after this back and forth did the court make the complained-of statement. It thus seems that the court was using rhetoric to emphasize to Mr. Brightwell that it would not allow its order to be portrayed as a merits endorsement of Isaacson's survey. The court's statement does not require us to reverse the jury verdict, because the survey was admissible, and the court's order denying the motion to exclude -- which carefully discusses the relevant facts and precedent in detail -- demonstrates that the motion was given full and proper consideration.

Because we have determined that the district court did not abuse its discretion by admitting Isaacson's survey, we need not consider whether the admission of the evidence affected Honestech's substantial rights. We similarly

need not address Honestech's argument that the district court abused its discretion in denying its motion for a new trial, as Honestech presented one -- and only one -- argument to the district court in urging it to grant a new trial: that the court had erred in admitting Isaacson's survey.[4]

## II.

We tally the points of this opinion: Honestech, a company that sells software that converts media from analog format to digital format, sued one of its competitors, Sonic Solutions, alleging that Sonic had infringed Honestech's trademark. More specifically, Honestech argued that the "VHS TO DVD" label attached to its product had acquired secondary meaning and that Sonic had created confusion among consumers by marking its similar product "Easy VHS TO DVD."

Sonic responded with a survey conducted by Dr. Bruce Isaacson; the survey results suggested that Honestech had failed to establish secondary meaning. Honestech asked the district court to exclude Isaacson's survey, arguing that it was unreliable because of its flawed methodology. The district court refused to exclude the report, and the case proceeded to trial. At trial, Honestech presented circumstantial evidence of secondary meaning. Sonic called Dr. Isaacson as a witness, who testified to the results of his survey.

Thus, the jury heard both sides of the arguments regarding secondary meaning. It then found that Honestech's mark was merely descriptive and that Honestech had failed to establish secondary meaning, returning a verdict in Sonic's favor. Honestech sought a new trial, arguing that Isaacson's unreliable survey had tainted the jury. The district court refused to grant a new trial; it

---

[4] Honestech says in its appellate brief that Isaacson's trial testimony "only confirmed Honestech's original reasons for opposing [the survey's] admission[,]" and that "the Court's refusal to correct this error following trial, thus, constituted an abuse of discretion for precisely the same reasons."

concluded that the survey was properly admitted, and further concluded that any error in its admission was harmless.

On appeal, Honestech again insists that the survey was improperly admitted. Sonic insists that the survey was reliable, and notes that this court has never said that a surveyor must use laser-like precision in crafting a survey universe.

We have held today that the district court did not abuse its discretion in admitting Isaacson's survey. The survey, although not perfect, was sufficiently reliable to be admitted; in other words, any methodological errors spoke to its weight, not its admissibility.

We have found no error in the admission of the survey, and the judgment of the district court is therefore, in all respects,

AFFIRMED.