Opinion issued October 20, 2005




















In The
Court of Appeals
For The
First District of Texas




NO. 01–04–00983–CV




AVANTI SALES INTERNATIONAL, INC., Appellant

V.

PYCOSA CHEMICALS, INC. AND JOHN LINQUIST, Appellees




On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2002-50215 




MEMORANDUM OPINION

          In this intellectual property case, Avanti Sales International, Inc. (“Avanti”)
sued John Linquist and Pycosa Chemicals, Inc. (“Pycosa”), alleging tortious
interference with ongoing and prospective business relationships, misappropriation
of trade secrets, trademark infringement, unfair competition, conspiracy, violations
of the Texas Tort Theft Liability Act (“Theft Act”),


 and conversion. In addition,
Avanti sued Linquist for breach of confidentiality and loyalty and for breach of
fiduciary duty. The trial court rendered a directed verdict against Avanti on its breach
of fiduciary duty claim against Linquist. The jury was asked one liability question
on the controlling issue of whether Pycosa and Linquist had misappropriated Avanti’s
trade secrets. The jury answered the question in the negative for both defendants. 
          In two issues, Avanti contends that the trial court erred (1) in refusing Avanti’s
proposed jury questions, definitions, and instructions for its claims other than
misappropriation of trade secrets and (2) in granting a directed verdict in favor of
Linquist on Avanti’s breach of fiduciary duty claim.
          We affirm.
 
Factual and Procedural Background



          Avanti is in the chemical grout business, and David Magill is its principal. One
of Avanti’s products, acrylamide, is extensively regulated by the Environmental
Protection Agency (“EPA”). Since 1978, Avanti has expended approximately three
million dollars developing its acrylamide product and complying with the EPA’s
prescribed measures to avert a ban on the product. For example, Avanti developed
safety manuals that the EPA has adopted as the industry standard. From 1978 to
2001, Avanti was the sole supplier of acrylamide grout in the United States, calling
its products “AV–100,” “AV–101,” and “AV–102.”
          From 1989 to 2001, Avanti employed Linquist as a warehouseman and a night
janitor. As a warehouseman, Linquist was given authorized access to the shipping
database in Avanti’s computer system. As a janitor, Linquist had the opportunity to
gain unauthorized access to the sales database. In 2002, Linquist left his position at
Avanti and became an independent sales contractor for Pycosa. 
          Pycosa sells urethane grout, and Avanti was its largest customer. When
Pycosa’s manager, Roger Boremanns, noted a decline in Avanti’s purchases, he
inquired with Magill as to possible causes. Magill insisted that Avanti was not using
another source. Boremanns disbelieved Magill and decided to counteract Pycosa’s
losses by entering the acrylamide market. After locating a supplier outside the United
States, Pycosa began marketing its own acrylamide product as “PC-100,” “PC-101,”
and “PC-102.”
          Over time, Avanti discovered that it had lost several of its acrylamide
customers to Pycosa. Avanti determined that Pycosa had targeted Avanti’s customers
through Linquist and theorized that Linquist had gained unauthorized access to
Avanti’s customer database while performing his janitorial duties after hours. In
addition, Avanti alleged that Pycosa named its new acrylamide products, “PC–100,”
“PC–101,” and “PC–102,” similarly to Avanti’s established products, “AV–100,”
“AV–101,” “AV–102,” to create confusion between the product lines. Avanti
brought suit against Pycosa and Linquist for tortious interference with ongoing and
prospective business relationships, misappropriation of trade secrets, trademark
infringement, unfair competition, conspiracy, violations of the Theft Act, and
conversion. In addition, Avanti brought suit against Linquist for breach of fiduciary
duty and breach of the duties of confidentiality and loyalty. Avanti sought $3.3
million in actual damages, punitive damages, and attorney’s fees, as well as an
injunction.
          Avanti tendered 27 proposed jury questions with accompanying definitions and
instructions. The final jury charge prepared by the trial court contained a single
liability question. At the formal charge conference, Avanti objected to the omission
of its proposed questions. The single liability question submitted to the jury was as
follows:
QUESTION NUMBER 1
          Did either of the defendants misappropriate Avanti’s trade secrets?
 
A “trade secret” may consist of any formula, pattern, device, or compilation of
information that is used in one’s business and which gives one an opportunity
to obtain an advantage over competitors who do not know or use it. It may be
a formula for a chemical compound or process of manufacturing, treating, or
preserving materials; a pattern for a machine or other device; or a list of
customers. To qualify as a trade secret, such matters must be guarded and
retained as a secret and must not be matters of public knowledge or which are
readily ascertainable by independent investigation.
 
You are instructed that to establish that Defendant(s) misappropriated Avanti’s
trade secrets, you must find each of the following:
 
          1.       the existence of a trade secret owned by Avanti, and
          2.       the Defendant discovered such trade secret by improper means or in
breach of a confidential obligation it had to Avanti, and
 
You are instructed that to discover a trade secret by “improper means” requires
that the Defendant have notice of both (i) the fact that the information is a trade
secret, and (ii) that the disclosure by the third person to the Defendant was a
breach of that person’s duty to Avanti, and
 
          3.       the same Defendant commercially used, or disclosed, such trade secret
without Avanti’s permission, and
          4.       the same Defendant’s use of such trade secrets caused injury to Avanti.          Claims of Charge ErrorIn its first issue, Avanti contends that the trial court “erred in not submitting
questions to the jury regarding Avanti’s causes of action as Avanti had plead the
causes of action, introduced more than sufficient evidence to support inclusion of a
question in the court’s charge and submitted proposed questions in substantially
correct form.” Avanti asserts that, with the exception of its misappropriation of trade
secrets claim, the single liability question submitted to the jury failed to account for
each theory of recovery presented in its pleadings and supported by the evidence. 
A.      Misappropriation of Trade Secrets: A Controlling Issue 
          We first address whether the trial court properly refused to submit Avanti’s
proposed questions, definitions, and instructions for its claims of tortious interference
with prospective business relationships,


 Theft Act, breach of fiduciary duty, and
conversion.
          We review a trial court’s submission of questions or instructions to the jury
utilizing an abuse of discretion standard. Tex. R. Civ. P. 277; Tex. Dept. of Human
Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion
when it acts without reference to guiding rules or principles. E.B., 802 S.W.2d at 649. 
To determine whether an alleged error in a jury charge requires reversal, the reviewing
court must consider the pleadings of the parties, the evidence presented at trial, and
the charge in its entirety. Island Recreational Dev. Corp. v. Republic of Tex. Sav.
Ass’n, 710 S.W.2d 551, 555 (Tex. 1986). Error in a jury charge is reversible only if
it probably caused the rendition of an improper judgment or probably prevented the
appellant from properly presenting the case on appeal. See Tex. R. App. P. 44.1(a). 
          The goal of the charge is to submit to the jury the issues for decision logically,
simply, clearly, fairly, correctly, and completely. Hyundai Motor Co. v. Rodriguez,
995 S.W.2d 661, 664 (Tex. 1999). To that end, the trial judge is accorded broad
discretion, provided the charge is legally correct. Id. However, the trial court “shall,
whenever feasible, submit the cause upon broad-form questions.” Tex. R. Civ. P. 277;
see Hyundai Motor, 995 S.W.2d at 663–64. At the same time, the trial court must
submit the controlling issues raised by the pleadings and the evidence. Brown v.
Goldstein, 685 S.W.2d 640, 641 (Tex. 1985).


 Though the trial court should obtain
fact findings on all theories pleaded and supported by evidence, a trial court is not
required to, and should not, confuse the jury by submitting differently worded
questions that call for the same factual finding. Hyundai Motor, 995 S.W.2d at
665–66. If a trial court’s charge fairly and fully presents all controlling issues to the
jury, it is not error to refuse to submit additional issues or instructions that are mere
shades or variations of the issues already submitted. Johnson v. King, 821 S.W.2d
425, 427 (Tex. App.—Fort Worth 1991, writ denied). Thus, a party’s entitlement to
a question on a controlling issue does not necessarily equate to entitlement to a
question for each specific cause of action pled. See Hyundai Motor, 995 S.W.2d at
664; Riddick v. Quail Harbor Condominium Assn., 7 S.W.3d 663, 673–74 (Tex.
App.—Houston [14th Dist.] 1999, no pet.); Paul Mueller Co. v. Alcon Laboratories,
Inc., 993 S.W.2d 851, 853–54 (Tex. App.—Fort Worth 1999, no pet.).
          Based on Avanti’s live pleading and the evidence presented at trial, the
controlling issue underpinning Avanti’s claims for tortious interference with
prospective business relationships, violation of the Theft Act, breach of fiduciary duty,
and conversion was whether Pycosa or Linquist had misappropriated Avanti’s trade
secrets. Central to each of these causes of action, as pled and developed by Avanti,
was the disputed issue whether the defendants had wrongly or unlawfully obtained
Avanti’s customer list and marketing information. The broad-form question submitted
to the jury, through its supporting instructions, requested the jury to make that
determination. A review of Avanti’s claims and the submitted charge is illustrative
of this point.
          For a plaintiff to recover on a claim for tortious interference with a prospective
business relationship, the jury must find that the defendant’s conduct is independently
tortious or unlawful. See Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex.
2001). Here, the independently tortious or unlawful conduct involved was the alleged
wrongful appropriation of Avanti’s trade secrets. This was precisely the conduct
targeted by the misappropriation question submitted to the jury.



          To be found culpable of theft, under the Theft Act, a jury must find that the
accused unlawfully appropriated the property of another. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 134.002(2), 134.003 (Vernon Supp. 2004–2005). Here, Avanti alleged
that the defendants violated the Theft Act (1) by unlawfully appropriating, i.e.,
stealing, its trade secrets or (2) by communicating its trade secrets. See id.
§ 134.002(2); see also Tex. Pen. Code Ann. § 31.05 (Vernon 2004) (pertaining
specifically to theft of trade secrets and referenced in section 134.002(2)). The
misappropriation question and its supporting instructions submitted to the jury covered
this theory of liability.
          To be liable for conversion, the jury would have been required to make an
affirmative finding that the defendants wrongfully exercised dominion and control
over the Avanti’s trade secrets in denial of, or inconsistent with, its rights in that
property.


 See Bandy v. First State Bank, Overton, Tex., 835 S.W.2d 609, 622 (Tex.
1992). Determining whether the defendants wrongfully exercised dominion and
control over Avanti’s claimed trade secrets is synonymous in this case with
determining whether the defendants misappropriated its trade secrets. In other words,
the alleged misappropriation is the “wrongful” conduct claimed by Avanti. The jury
instructions given in support of the misappropriation question, in particular the
instruction that, for misappropriation to have occurred, a defendant had to discover
such trade secret by improper means or in breach of a confidential obligation,
accounted for the “wrongfulness” component.
          In support of the breach of fiduciary duty claim, Avanti asserts that, while
Linquist was an employee of Avanti, he obtained Avanti’s “confidential customer list
and marketing information” and then used the information to Avanti’s detriment. 
Avanti contends that, in so doing, Linquist breached a fiduciary duty that he owed to
Avanti. However, at the heart of Avanti’s claim is whether Linquist misappropriated
Avanti’s trade secrets by breaching his alleged fiduciary duty. Here, the
misappropriation question instructed the jury that, to establish misappropriation of
Avanti’s trade secrets, it had to find that a “[d]efendant discovered such trade secret
by improper means or in breach of a confidential obligation it had to Avanti.” Thus,
Avanti’s breach of fiduciary duty claim was effectively incorporated into the
submitted question as one means of misappropriation.
          In sum, Avanti’s proposed questions for its tortious interference with
prospective business relationships, violation of the Theft Act, breach of fiduciary duty,
and conversion claims were mere shades or variations of the misappropriation issue
submitted by the trial court to the jury.


 Had it submitted each of Avanti’s requested
questions, the trial court would have risked confusing the jury by submitting
differently worded questions that call for the same factual finding: whether the
defendants misappropriated Avanti’s trade secrets. See Hyundai Motor, 995 S.W.2d
at 665–66. We hold that the trial court properly refused Avanti’s proposed questions,
definitions, and instructions for tortious interference with prospective business
relationships, violation of the Theft Act, breach of fiduciary duty, and conversion. We
further hold that the trial court properly submitted a broad-form question asking the
jury to determine whether the defendants had misappropriated Avanti’s trade secrets. 
B.      Trademark Infringement Claims: Sufficiency of the Evidence
          We next determine whether the trial court properly refused to submit Avanti’s
proposed questions, definitions, and instructions for its trademark infringement claims. 
With regard to these claims, we determine whether the evidence was legally sufficient
to support submission of the issues to the jury. Only issues raised by the evidence are
to be submitted to the jury. Tex. R. Civ. P. 278. If no evidence is offered to support
the submission of an issue, the trial court acts appropriately by excluding it from the
jury charge. See Brown, 685 S.W.2d at 641. That is, a trial court is obligated to
submit an issue only if the evidence on the issue “amounts to more than a scintilla.” 
Roy v. Howard-Glendale Funeral Home, 820 S.W.2d 844, 846 (Tex. App—Houston
[1st Dist.] 1991, writ denied). To rise above a scintilla, the evidence offered to prove
a vital fact must do more than create a mere surmise or suspicion of its existence. See
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of
evidence exists when the evidence, as a whole, rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. See Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). Whether legally sufficient
evidence supports submitting a theory of recovery to the jury presents a question of
law that we review de novo. See C.M. Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768,
780 (Tex. App.—Houston [1st Dist.] 2004, no pet.); K-Mart Corp. v. Pearson, 818
S.W.2d 410, 413 (Tex. App.—Houston [1st Dist.] 1991, no writ). 
          In support of its trademark infringement claims, Avanti alleged that Pycosa
similarly named its new acrylamide products, “PC100,” “PC101,” and “PC102,” to
Avanti’s established products, named “AV–100,” “AV–101,” “AV–102,” to create
confusion between the product lines. Avanti expressly pled section 1114(1) of the
Lanham Act as a legal basis for its trademark infringement claim. See 15 U.S.C.
§ 1114(1). Avanti’s first amended petition can also fairly be read to assert a state-law
trademark-infringement claim. 
          To prove trademark infringement under federal law, Avanti was required to
show that Pycosa’s use of the “PC100,” “PC101,” and “PC102” nomenclature was
likely to cause confusion among consumers as to the source, affiliation, or sponsorship
of Pycosa’s products or services. See 15 U.S.C.A. § 1114(1) (Law. Co-op. 1991 &
Supp. 2005); Scott Fetzer Co. v. House of Vacuums, Inc., 381 F.3d 477, 483 (5th Cir.
2004); Westchester Media v. PRL USA Holdings, Inc., 214 F.3d 658, 663 (5th Cir.
2000). A “likelihood of confusion” means that confusion is not just possible, but
probable. Scott Fetzer, 381 F.3d 483; Westchester Media, 214 F.3d at 663–64. A
determination of a likelihood of confusion under federal law is the same as the
determination of a likelihood of confusion under Texas law for a trademark
infringement claim. Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 193 (5th
Cir. 1998) (citing Zapata Corp. v. Zapata Trading Int’l, Inc., 841 S.W.2d 45, 47 (Tex.
App.—Houston [14th Dist.] 1992, no writ)); see also All Am. Builders, Inc. v. All Am.
Siding of Dallas, Inc., 991 S.W.2d 484, 488 (Tex. App.—Fort Worth 1999, no pet.)
(“The issues in a common law trademark infringement action under Texas law are no
different than those under federal trademark law.”).
          In its appellant’s brief, Avanti asserts that it introduced “evidence showing the
possibility of confusion in the market place.” (Emphasis added.) Avanti does not
contend that it offered evidence showing the probability of confusion, as required. In
any event, though the evidence cited by Avanti may support a possibility of confusion,
it is not legally sufficient to show a probability of confusion. 
          Avanti cites the testimony of its president, David Magill, who testified that he
was confused by the similarities in the nomenclature of the products. Aside from the
fact that Avanti’s president is an interested witness, such testimony is not evidence
showing that the nomenclature used by Pycosa was likely to cause confusion among
consumers.
          Avanti next cites to Magill’s testimony that, when the City of Beaumont
requested bids, it would request the specific product that it required by using the terms
“AV–100” or “acrylamide.” We do not understand, and Avanti does not explain, how
such evidence relates to or supports the element of likelihood of confusion.
          Avanti also refers us to the testimony of Joey Looper, a representative of a
company that had purchased acrylamide products from Avanti for 15 years. In the
cited testimony, Looper stated that he associated the trade names AV–100, AV–101,
and AV–102 with the products that he purchased from Avanti. He testified that he had
been solicited by Linquist to purchase “something comparable to AV–100,” which
Linquist referred to as “PC100.” Looper stated that he had not purchased any products
from Pycosa.
          Looper also testified that, when he thought of the numbers 100, 101, and 102
in connection with acrylamide products, he also thought of Avanti. When asked
whether Pycosa’s use of the same numbers created any confusion in his mind, Looper
responded, “Yes. Possibly. Yeah.” Thus, Looper’s testimony supports Avanti’s
contention in its brief, for which the testimony is cited, that Pycosa’s naming of its
products created a possibility of confusion, but does not create more than a mere
surmise or suspicion of a the probability of consumer confusion.
          Lastly, Avanti points to the testimony of Steve Henning, a former sales manager
of Avanti. Henning agreed that Avanti’s and Pycosa’s products were “more or less the
same thing” and that the names of the companies’ products were “very close.” 
Henning responded affirmatively when asked whether naming a product closely to an
already established product was one way to “get into the market” or “meet or exceed
the standard.” Lastly, he agreed that naming a product “real close” to a competitor’s
product is one way to “get a leg up” or “take a shortcut in business.” As with the other
testimony cited by Avanti, Henning’s testimony did not create more than a mere
surmise or suspicion of customer confusion.


 
          Without reference to legal authority, Avanti also contends that “[t]he mere
similarity of the marks is itself evidence from which the jury could infer confusion.” 
However, “[t]he test for infringement is the likelihood of confusing similarity, not
merely similarity.” B. H. Bunn Co. v. AAA Replacement Parts Co., 451 F.2d 1254,
1261 (5th Cir. 1971) (italics in original); see Perini Corp. v. Perini Constr., Inc., 915
F.2d 121, 128 (4th Cir. 1990) (“[I]n a market with extremely sophisticated buyers, the
likelihood of consumer confusion cannot be presumed on the basis of the similarity
in trade name alone.”).
          We conclude that the evidence cited by Avanti to support submission of its
trademark infringement claims was legally insufficient to show the likelihood, i.e.,
probability, of confusion.


 Thus, Avanti has not demonstrated that it was entitled to
have its trademark infringement claims submitted to the jury. See Tex. R. Civ. P. 278. 
We hold that the trial court properly refused to submit Avanti’s proposed questions as
to that claim.
C.      Unfair Competition, Conspiracy, and Punitive Damages
          Avanti also complains of the trial court’s refusal to submit its proposed question
for its unfair competition and conspiracy claims. 
          A claim for unfair competition “is the umbrella for all statutory and nonstatutory
causes of action arising out of business conduct which is contrary to honest practice
in industrial or commercial matters.” United States Sporting Prods., Inc. v. Johnny
Stewart Game Calls, Inc., 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied)
(quoting American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 14 (5th
Cir. 1974)). Unfair competition requires that the plaintiff show an illegal act by the
defendant that interfered with the plaintiff’s ability to conduct its business. 
Schoellkopf v. Pledger, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ
denied). The illegal act need not necessarily violate criminal law, but must at least be
an independent tort. Id. (“Without some finding of an independent substantive tort or
other illegal conduct, we hold that liability cannot be premised on the tort of ‘unfair
competition.’”). 
          Here, the “illegal act” claimed by Avanti to support its unfair competition claim
is the defendants’ alleged trademark infringement.


 However, because Avanti was
not entitled to have its trademark infringement claims submitted to the jury, it was also
not entitled to have its unfair competition claim submitted. Thus, the trial court
properly refused to include Avanti’s proposed unfair competition question and
instruction in the court’s charge. 
          Similarly, conspiracy is considered a derivative tort because a defendant’s
liability depends on its participation in some underlying tort for which the plaintiff
seeks to hold the defendant liable. Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex.
1996). Therefore, to prevail on its civil conspiracy claim, Avanti had to show that
Pycosa or Linquist were liable for some underlying tort. Trammell Crow Co. No. 60
v. Harkinson, 944 S.W.2d 631, 635 (Tex. 1997). Even assuming that the trial court
should have submitted a jury question for conspiracy based on Avanti’s
misappropriation of trade secrets claims, any such error was harmless because the jury
did not find any misappropriation. Thus, such failure did not result in the rendition
of an improper judgment. See Tex. R. App. P. 44.1(a). 
          Recovery of punitive damages also requires a finding of an independent tort
with accompanying actual damages. See Federal Express Corp. v. Dutschmann, 846
S.W.2d 282, 284 (Tex. 1993). As with Avanti’s conspiracy claim, even if we assume
that the trial court should have submitted a punitive damages question, such error was
harmless without a liability finding. See Tex. R. App. P. 44.1(a). 
          We overrule Avanti’s first issue.
Directed Verdict on Breach of Fiduciary Claim
          In its second issue, Avanti contends that the trial court erred in granting a
directed verdict to Linquist on Avanti’s breach of fiduciary duty claim. Because the
jury did not find Linquist liable for misappropriation of trade secrets by breaching his
“confidential obligation,” any error in granting the directed verdict would be harmless. 
See Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573, 585 (Tex. App.—San Antonio 1998,
pet. denied) (holding that erroneous directed verdict on plaintiff’s conversion of water
after termination of lease claim harmless based on jury’s failure to find in plaintiff’s
favor regarding termination of lease).
          We overrule Avanti’s second issue.

CONCLUSION
We affirm the judgment of the trial court.
 
 
 
 
                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.