United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 10, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-10979
_____

GEORGE MICHAEL SMITH,

Plaintiff - Appellant,

versus

EMC CORPORATION,

Defendant - Appellee.

_____

Appeals from the United States District Court
For the Northern District of Texas, Dallas
(No. 3:02-CV-862-M)

_____

Before DeMOSS, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Appellant George Michael Smith sued his employer, EMC Corporation ("EMC"), for breach

of contract. Smith now appeals the district court's denial of three motions: for leave to amend his

complaint to include a fraud claim; for attorney's fees; and for leave to amend his complaint to include

a Massachusetts Wage Act claim. Because the district court did not abuse its discretion in denying

each of Smith's motions, we AFFIRM.

**I. FACTS AND PROCEEDINGS**

Smith worked for EMC as a commissioned salesman of technology products from 1994

through 2002. Smith's annual compensation was governed by one of EMC's North American Sales Compensation Plans, which detailed the salary, commissions, and bonuses for which Smith was eligible. Each year, Smith met with EMC representatives to sign a Goal Acknowledgment Form ("GAF"), which formalized and executed the year's Compensation Plan.

In March 2001, Smith and EMC entered into a series of negotiations about the terms of Smith's 2001 Compensation Plan. A GAF was signed by Smith and Greg Johnson, the Director of Financial Services, in September 2001. The parties contest this Compensation Plan's terms: Smith contends the agreement provided him $250,000 per year, while EMC alleges the version offered only $165,000.

The parties also dispute the document's validity. Johnson testified at trial that the Compensation Plan could not have been approved or authorized without the signature of Bill Connell, the Director of Operations. Smith asserts that he never knew that Johnson lacked the authority to execute the September GAF.

In March 2002, Smith sued EMC for breach of contract, defamation, intentional infliction of emotional distress, negligence, and gross negligence. He filed suit in Texas state district court, invoking Texas state law. EMC removed the case to the United States District Court for the Northern District of Texas based on diversity jurisdiction. On October 9, EMC filed an unsuccessful motion to abate and compel arbitration. EMC then filed a motion for partial summary judgment on Smith's tort claims and on two of his breach of contract claims. Smith withdrew his contract and negligence claims. The district court granted summary judgment on his defamation and intentional infliction of emotional distress allegations. Smith's five remaining breach of contract claims, alleging that EMC failed to compensate him fully from 1998 to 2002, proceeded to trial.

On June 12, 2003, EMC filed a motion *in limine* to exclude evidence relating to Smith's attorney's fees. Massachusetts law prohibits awarding attorney's fees in breach of contract cases. Because the Compensation Plans contained Massachusetts choice-of-law provisions, the district court granted EMC's motion for purposes of evidence admitted at trial, but reserved judgment on Smith's legal entitlement to receive attorney's fees.

The jury trial began on June 23, 2003. On June 26, EMC employee Greg Johnson testified that he lacked authority to execute the September 2001 GAF that he and Smith had signed. Based on this evidence, on June 27, Smith sought leave to amend his complaint to include a cause of action for fraud. The district court denied Smith leave to amend.

On June 27, the jury returned a verdict in favor of Smith on his 2000 breach of contract claim and awarded him $76,979. The jury denied Smith relief on his 2001 and 2002 claims. EMC agreed to pay Smith additional compensation under his 1998 and 1999 contracts. On July 10, the district court entered a final judgment, consisting of the jury's award of $76,979, EMC's stipulated $46,303, and pre- and post-judgment interest. The final judgment provided that Smith could submit evidence on his claim for attorney's fees within fourteen days.

On July 21, Smith filed a motion to alter and amend the judgment, arguing that Texas, rather than Massachusetts, contract law applied to his claims. Smith also filed a motion to recover attorney's fees pursuant to Texas law and a motion for a new trial. The district court denied these motions. The court found that the law of Massachusetts, rather than Texas, governed Smith's claims because they arose from the 1998, 1999, and 2000 Compensation Plans.

On September 8, Smith supplemented his motion to alter and amend the judgment. He argued that if Massachusetts law did apply, he should be able to add a claim under the Massachusetts Wage

3

Act for attorney's fees and treble damages.  The district court denied Smith's motions.  Smith timely appeals.

## II.  STANDARD OF REVIEW

This Court reviews a district court's decision to deny leave to amend for abuse of discretion. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004).  A district court's choice-of-law determination is reviewed *de novo.  Spence v. Glock, GES.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000).

## III.  DISCUSSION

### A.    Denial of Smith's Motion for Leave to Amend a Fraud Claim

Smith contends that the district court erred in denying his motion to amend a fraud claim both because 1) the district court lacked any valid reason to do so under Federal Rule of Civil Procedure 15(a); and 2) the parties tried the fraud claim by consent under Federal Rule of Civil Procedure 15(b). The district court did not abuse its discretion in denying Smith's motion under either subsection of Rule 15.

1.    Federal Rule of Civil Procedure 15(a)

Rule 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1983)).  A district court must possess a "substantial reason" to deny a request for leave to amend. *Id. (*quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)).  However, decisions concerning motions to amend are "entrusted to the sound discretion of the district court . . . ." *Quintanilla v. Tex. Television, Inc.,* 139 F.3d 494, 499 (5th Cir. 1998) (quoting *Wimm v. Jack*

4

*Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

As outlined by the Supreme Court, this Circuit examines five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, the leave sought should be "freely given." *Foman*, 371 U.S. at 182. The district court correctly denied Smith's motion based on his undue delay in filing the motion to amend, as well as the proposed amendment's undue prejudice to EMC.

a.      Undue delay

Although "'it is generally true that leave to file amendments should be freely given, amendments should be tendered no later than the time of pretrial, unless compelling reasons why this could not have been done are presented.'" *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1562 (5th Cir. 1985) (quoting *Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir. 1971)) (citation omitted). Although Rule 15(a) does not impose a time limit "for permissive amendment, 'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992) (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)). In such a situation, the plaintiff bears the burden of showing the delay to be "'due to oversight, inadvertence, or excusable neglect.'" *Id.* (quoting *Gregory*, 634 F.2d at 203).

To excuse the lateness of his motion to add a fraud claim, Smith argues that any delay was caused by EMC. He contends that he was unable to plead a fraud claim prior to trial for two reasons: EMC failed to fulfill its discovery obligations and EMC waited until trial to argue that the September

5

2001 GAF required Connell's signature. We find both arguments unpersuasive.

Although EMC was sanctioned for discovery violations, Smith does not argue that EMC failed specifically to provide him with the 2001 GAF document at issue. As to Smith's second argument, it is undisputed that Smith had not discovered prior to trial that Johnson would testify that he alone could not authorize the September GAF. Smith's lack of information does not excuse his delay in recognizing a potential fraud claim. Considering that the only claims with sufficient merit to proceed to trial focused entirely on the Compensation Plans, Smith should have explored the documents' validity during discovery. Instead, Smith focused on fruitless tort claims and alternate contract theories. In the parties' pretrial order, Smith contended that he and EMC possessed merely an oral contract which governed his 2001 claims. Per his own litigation strategy, Smith did not make the 2001 GAF an issue prior to trial and did not question Johnson about the 2001 GAF during his deposition. The district court did not abuse its discretion in finding that Smith's insufficient discovery did not excuse his adding a claim near the close of trial.

b. Undue prejudice

The district court correctly concluded that Smith's motion, filed on the second to last day of trial, would be prejudicial to EMC if granted. A defendant is prejudiced if an added claim would require the defendant "to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court." *Duggins v. Steak 'n Shake*, *Inc.*, 195 F.3d 828, 834 (5th Cir. 1999).

The district court found that the evidence submitted thus far did not support a fraud claim. Consequently, both parties would have had to reopen discovery and prepare additional theories of the case. Allowing Smith to amend his complaint would have caused considerable delay and expense for EMC and the court. Recognizing such costs, we are reluctant to reverse a district court's denial

6

of amendments such as Smith's. *See, e.g., Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) ("'[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts [of appeals] are less likely to find an abuse of discretion due to the prejudice involved.'" (quoting *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)).

2.     Federal Rule of Civil Procedure 15(b)

Smith's argument that EMC consented to trying the fraud claim is meritless. Rule 15(b) requires that issues tried by express or implied consent are "treated in all respects as if they had been raised in the pleadings" and any relevant amendments of the pleadings "may be made upon motion of any party at any time, even after judgment." FED. R. CIV. P. 15(b). Whether an issue has been tried with the implied consent of the parties depends upon whether the parties recognized that the issue entered the case at trial, whether the evidence supporting the issue was introduced at trial without objection, and whether a finding of trial by consent would prejudice the opposing party. *United States v. Shanbaum*, 10 F.3d 305, 312–13 (5th Cir. 1994).

Based on the record, all three factors support the district court's finding that the fraud claim was not tried by consent. First, EMC contests Smith's argument that the issue of fraud entered the case at trial. Second, EMC objected to Smith's attempts to enter evidence related to a possible fraud claim at trial. Third, as discussed in the previous section, EMC would be prejudiced by having to defend against a new theory of liability first introduced at the close of trial.

**B.     Denial of Smith Motion for Attorney's Fees**

The district court correctly denied Smith's motion for attorney's fees. Each of the Compensation Plans contained a Massachusetts choice-of-law provision governing "matters arising

7

out of or associated with the Plan(s)." Massachusetts state law does not allow for recovery of attorney's fees in breach of contract cases. *See Schultz v. Subaru*, 553 N.E.2d 893, 893 (Mass. 1990).

District courts sitting in diversity apply the choice-of-law rules of the forum state. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). In Texas, contractual choice-of-law provisions are typically enforced. *Access Telecomm., Inc. v. MCI Telcomms. Corp.*, 197 F.3d 694, 705 (5th Cir. 1999) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990)). Reviewing the district court's application of Massachusetts law *de novo*, we affirm the denial of Smith's attorney's fees.

Smith contends that the district court should not have enforced the Massachusetts choice-of-law clause because EMC waived the provision by failing to invoke it in a timely fashion. However, Smith had ample notice that Massachusetts state law potentially applied to his breach of contract claims. In 2002, both parties relied on Massachusetts law in their briefs disputing whether EMC's arbitration policy was enforceable against Smith. Most importantly, when requested by the district court during the pretrial phase, EMC filed a motion *in limine* asserting the applicability of Massachusetts law. Smith never filed an amended claim for attorney's fees prior to trial or requested a continuance to enable him to do so.

Smith also argues that EMC, if it planned to invoke Massachusetts law during trial, impermissibly relied upon Texas law during the pretrial phase. However, each of these motions and briefs involves claims unrelated to the Compensation Plans. The state's law specified by the choice-of-law clause is applied only to those claims pertaining to the instrument. All other claims are governed by the forum state's law. *See, e.g., Thompson & Wallace of Memphis, Inc. v. Falconwood*

*Corp.*, 100 F.3d 429, 433 (5th Cir. 1996) (applying New York law to claims involving loan agreements with choice-of-law provisions but Texas law to tort claims that "are separate from the agreement and its enforcement, and thus . . . not govern[ed by] . . . the choice-of-law provision"); *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990) (applying the forum state's law to certain claims because the "parties' narrow choice of law clause does not address the entirety of the parties' relationship"). The district court correctly applied Massachusetts law only to those issues arising from the Compensation Plans.

Smith also argues that even if the choice-of-law clause was properly invoked, Texas law prohibits its enforcement because it offends a fundamental state policy. Contractual choice-of-law provisions are not enforced in Texas if the law of the chosen state violates a fundamental public policy of Texas. *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 (5th Cir. 1993). While Texas law allows attorney's fees to be awarded in breach of contract claims, TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon Supp. 2002), they are not required by public policy. Texas courts frequently deny attorney's fees if prohibited by the state law designated by contractual choice-of-law provisions. *See, e.g., Rapp Collins Worldwide, Inc. v. Mohr*, 982 S.W.2d 478, 487–88 (Tex. App.—Dallas 1998); *Bergstrom Air Force Base Fed. Credit Union v. Mellon Mortgage, Inc.–East*, 674 S.W.2d 845, 850 (Tex. App.—Tyler 1984). This Court has reached this same conclusion. *See Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73 (5th Cir. 1987) (applying Illinois law, as designated by a promissory note's choice-of-law clause, to reverse a Texas district court's award of attorney's fees). Denying Smith attorney's fees according to the Compensation Plans' choice-of-law provisions does not offend public policy.

**C.** **Denial of Smith's Motion for Leave to Amend a Massachusetts Wage Act Claim**

Smith argues that if Massachusetts law does apply, he should be allowed to add a claim under the Massachusetts Wage Act for attorney's fees and treble damages. MASS. GEN. LAWS ch. 149, § 150 (2004). As previously discussed, Rule 15(a) "evinces a bias in favor of granting leave to amend." *Rosenzweig,* 332 F.3d at 863 (citation and internal quotation m arks omitted). However, district courts are discouraged from granting motions to amend after entering final judgments. *See, e.g., Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000) ("In cases where a party seeks to amend her complaint after ent ry of judgment, 'we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling.'" (quoting *Briddle v. Scott*, 63 F.3d 364, 379 (5th Cir. 1995)).

Because of the motion's undue delay and undue prejudice to EMC, the district court did not abuse its discretion in denying Smith leave to amend. *See Forman*, 371 U.S. at 182 (specifying undue delay and undue prejudice as two factors trial courts should consider when deciding whether to grant leave to amend). Smith's motion to amend, filed on September 8, 2003, came after considerable delay. EMC filed its motion *in limine* invoking Massachusetts law on June 12, 2003. A few days later, the district judge indicated that Massachusetts law applied at least to evidence admitted at trial. Yet Smith did not file the motion to amend until two months after the close of trial.

EMC would have been prejudiced if required to defend against Smith's new theory of recovery. *See, e.g., Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (affirming an order denying leave to amend where the amended complaint would have "established an entirely new factual basis for the plaintiffs' claims and, consequently, would have required that the parties reopen discovery and alter their trial strategies"), *reinstated in relevant part*, 37 F.3d 1069, 1073 & n.8 (5th

Cir. 1994) (en banc). Smith fails to justify either his delay in moving to add the Wage Act claim or its prejudice to EMC. The district court correctly denied Smith's motion.[1]

## CONCLUSION

Because the district court did not abuse its discretion in denying Smith's motions for leave to amend his complaint and to receive attorney's fees, we AFFIRM.

---

[1] The district court also denied Smith's motion because of the amended claim's futility. In order to bring an action under the Massachusetts Wage Act, a plaintiff must receive permission from the Massachusetts Attorney General. MASS. GEN. LAWS ch. 149, § 150 (2004). The district court concluded that "this consent must be obtained prior to instituting a cause of action." Smith notes that although he only requested consent after the end of trial, the Massachusetts Attorney General's Office "carefully reviewed" his request and granted him permission to sue one day after receiving the request. Because Smith's motion to amend fails due to its undue delay and prejudice, we need not reach the procedural feasibility of a Massachusetts Wage Act claim.