# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 10, 2022

Lyle W. Cayce
Clerk

No. 21-40336

Springboards to Education, Incorporated,

*Plaintiff—Appellant*,

*versus*

Pharr-San Juan-Alamo Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CV-524

Before Willett, Engelhardt, and Wilson, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

This trademark infringement case is like déjà vu all over again.[1] After we affirmed another district court's summary-judgment dismissal of the same plaintiff's suit against another Texas school district, the district court granted summary judgment to the defendant school district here. Because the cases are materially indistinguishable, we AFFIRM.

---

[1] Nate Scott, *The 50 Greatest Yogi Berra Quotes*, USA Today FTW (Mar. 28, 2019), https://ftw.usatoday.com/2019/03/the-50-greatest-yogi-berra-quotes.

No. 21-40336

I.

Plaintiff-Appellant Springboards to Education, Inc. sells products to school districts in connection with its "Read a Million Words Campaign." Designed by Springboards founder Johnny Lopez, the campaign "builds excitement around reading" by incentivizing schoolchildren to read books through promises of induction into the "Millionaire's Reading Club," receipt of the "Millionaire Reader" award, and access to incentive items such as certificates, T-shirts, drawstring backpacks, and fake money. *See Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 810 (5th Cir. 2019). Springboards' goods typically bear any combination of four trademarks the company successfully registered with the U.S. Patent and Trademark Office between 2011 and 2013: "Read a Million Words," "Million Dollar Reader," "Millionaire Reader," and "Millionaire's Reading Club."

Defendant-Appellee Pharr-San Juan-Alamo Independent School District ("PSJA") is a public school district in Hidalgo County, Texas. On July 20, 2016, Springboards sued PSJA and its library coordinator in federal district court alleging trademark infringement, trademark counterfeiting, trademark dilution, false designation of origin, and related Texas- and common-law claims. On March 27, 2017, Springboards filed an amended complaint removing its claims against PSJA's library coordinator and its state- and common-law claims against PSJA, but retaining its four Lanham Act claims against PSJA. Four years later, the district court granted PSJA summary judgment in an oral Zoom ruling.

In the meantime, we decided *Springboards to Education, Inc. v. Houston Independent School District*. Observing obvious parallels between this case and that case, the district court based its ruling here on our decision there. It was correct to do so, for that case is a near twin of this one.

2

No. 21-40336

Indeed, the *Houston* case and this case are functionally identical. In both cases, the same plaintiff—Springboards—makes essentially the same claims against a Texas school district for the district's use of "millionaire"-themed reading incentive programs allegedly "using products and services bearing marks and branding identical to or confusingly similar to Springboards' marks."[2] In *Houston*, we affirmed the district court's ruling against Springboards. We do the same here.

## II.

We review a district court's grant of summary judgment de novo. *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 568 (5th Cir. 2021) (en banc). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In simple terms, then, "[s]ummary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Thus, sitting in the shoes of a reasonable jury, we must decide de novo whether Springboards has a plausible shot at relief on its assortment of Lanham Act claims. Congress enacted the Lanham Act "to protect persons engaged in [] commerce against unfair competition" "by making actionable the deceptive and misleading use of marks in such commerce." 15 U.S.C. § 1127. As it did in *Houston*, "Springboards seeks to enforce its trademarks and service mark through four causes of action: trademark infringement, [trademark] counterfeiting, false designation of origin, and trademark

---

[2] This practice is not uncommon. In its brief, PSJA shows that use of "millionaire"-themed reading challenges is widespread in the educational field.

3

dilution." *See Houston*, 912 F.3d at 811. Like the *Houston* panel, we address each claim in turn—albeit in briefer fashion, given our sister panel's extensive work there.

### A.

We begin with trademark infringement. As applicable here, the Lanham Act imposes civil liability on any person who without consent uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Following the *Houston* panel's lead, we focus on what is perhaps § 1114(1)(a)'s most foundational threshold inquiry: whether PSJA's use of Springboards' marks was "likely to cause confusion[] . . . mistake, or to deceive" in the first place. *See id.* It was not.

To prove infringement, a mark holder must show that an infringer's use of the mark in question "create[d] a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship" of the infringer's products or services. *Houston*, 912 F.3d at 811–12 (alteration in original) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998)). By extension, when a defendant's use of a plaintiff's mark would *not* confuse potential consumers, the plaintiff has no claim for trademark infringement.

This makes confusion the name of the game. To determine the likelihood of confusion, we consult eight nonexhaustive and flexible "digits of confusion":

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers,

(5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,] . . . [and] (8) the degree of care exercised by potential purchasers.

*Bd. of Supervisors v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000)). These "digits" are mere guideposts on the road to a finding of confusion; they are not "an exact calculus" for reaching such a finding. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

We need not parse the individual digits here, however, for the practical effect of any conceivable confusion on the sophisticated school districts to which Springboards markets its products is at most exceedingly remote.[3] Indeed, worlds apart from an unwitting shopper expecting Coca-Cola but finding instead an inferior beverage in the red can she brought home from the store,[4] PSJA's most brazen use of Springboards' marks could place Springboards' institutional customers at little risk of confusion at most. Distinguishing between Springboards' catalog of "millionaire"-themed goods and unaffiliated "millionaire"-themed goods other educational entities have elected to deploy is not difficult, and unique imprints on "millionaire"-themed reading challenges are widespread in the educational field.[5] As in *Houston*, Springboards does not allege that PSJA itself is in the business of competing with Springboards by selling its own "millionaire"-themed products to the school districts that make up Springboards' customer

---

[3] Recall, importantly, that the touchstone of trademark infringement is *consumer* confusion.

[4] This classic example refers to the analogous area of trade *dress* but is otherwise right on the money for illustrative purposes.

[5] *See supra* note 2.

base. Consequently, Springboards' theory for trademark infringement is as overwrought as it is hard to grasp—there is simply no evidence in the record that PSJA's use of a million-word reading challenge confuses (or intends to confuse) the sophisticated school districts that Springboards targets with its marks.

Importantly, this is not a patents case or a trade-secrets case. There is no claim, for instance, that PSJA has misappropriated Springboards' intellectual property by tapping into the educational genius of a "million-word challenge." Instead, Springboards' claims fall exclusively in the trademark lane, where PSJA's influence on *consumers* of the products at issue is our lodestar. Like the *Houston* courts, the district court was correct that no reasonable jury could find a likelihood that consumers of Springboards' niche products would be confused by PSJA's implementation of a reading program using words and phrases bearing abstract similarity to Springboards' marks.

Springboards' attempts to distinguish this case from *Houston* are unavailing. To the extent they are apt to begin with,[6] none move the needle. Springboards contends that the *Houston* school district had just one summer reading program whereas PSJA has had several year-long reading programs, that the requirements of PSJA's reading program are identical—and not merely similar—to the requirements of Springboards' model program, and that Springboards' founder Johnny Lopez "worked his entire career in education in Hidalgo County where PSJA is located and visited the schools, teachers and administrators at PSJA—unlike the district in *Houston* that is over 300 miles away." But any marginal risk of confusion these differences

---

[6] It is hard to see how some are. Consider, for example, Springboards' observation that "[t]he student population of PSJA is 10% of the size of the district in *Houston*." Analytically speaking, this seems to be a distinction without a difference.

No. 21-40336

may add remains trumped by far more foundational flaws with Springboards' attempt to jam square pegs into round holes. One decisive fact remains all the same: sophisticated school-district customers can tell the difference between goods Springboards is selling them and goods and slogans PSJA is not.[7]

## B.

Springboards' remaining claims—for trademark counterfeiting, false designation of origin, and trademark dilution—are more easily dispatched. Springboards' claims for trademark counterfeiting and false designation of origin likewise require a threshold showing of likelihood of confusion that, as we've already explained, Springboards does not make.[8]

That leaves Springboards' trademark dilution claim. To prove trademark dilution, a mark holder must show that its marks are "famous." *Houston*, 912 F.3d at 818; *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012). A "famous" mark is one that is "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A). That, Springboards' marks are not.

Accordingly, the district court is AFFIRMED.

---

[7] If any doubt remains, Springboards' claims likely suffer from a host of other fatal flaws as well. The district court's belt-and-suspenders findings on commercial use, fair use, and ornamentality are all plausible. We need not and do not address these issues, however.

[8] *See Houston*, 912 F.3d at 818 ("Likelihood of confusion is also an element of counterfeiting."); *King v. Ames*, 179 F.3d 370, 374 (5th Cir. 1999) (likelihood of confusion is "essential element" of Lanham Act false designation of origin).