# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 26, 2023

Lyle W. Cayce
Clerk

_____

No. 21-40337

_____

Springboards to Education, Incorporated,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Mission Independent School District,

*Defendant—Appellee/Cross-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CV-527

_____

Before Elrod, Ho, and Wilson, *Circuit Judges*.

Per Curiam:[*]

We must determine whether the district court correctly granted summary judgment dismissing Springboards to Education's ("Springboards") trademark infringement claims. Springboards faces an uphill battle, as three of our sister panels have already rejected Springboards' arguments in near-twin cases. We see no basis to diverge from those opinions, so we affirm.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-40337

## I.

Springboards offers a suite of products and services to school districts that Springboards calls its "Read a Million Words" campaign ("the Campaign"). The Campaign fosters literacy and builds excitement around reading by encouraging students to read a million words during the school year. Each iteration of the Campaign is tailored to the individual school, and successful "millionaire readers" receive an induction party and various prizes to celebrate their accomplishment. To facilitate the Campaign, Springboards registered the trademarks "Read a Million Words," "Millionaire Reader," "The Millionaire's Reading Club," and "Million Dollar Reader."

Mission Independent School District ("Mission") is located in Hidalgo County, Texas. Mission also developed a reading program that encouraged students to read a million words during the school year. It identified students who did so as "millionaire readers" and provided various accolades to successful students that identified them as "millionaire readers." Additionally, at least one Mission school had its own "millionaire club."

Springboards sued Mission under the Lanham Act, alleging trademark infringement, counterfeiting, dilution,[1] and false designation of origin. Mission moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that it was immune from suit under the Eleventh Amendment. The parties then cross-moved for summary judgment on the merits. The district court held that Mission was not immune from suit but granted Mission's summary judgment motion on the merits. Springboards timely appealed, and Mission cross-appealed the district court's denial of Eleventh Amendment

---

[1] The dilution claim was dropped and is not at issue in this appeal.

No. 21-40337

immunity.  Consistent with our precedent, we affirm.  *See Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174 (5th Cir. 2023) ("*McAllen*"); *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747 (5th Cir. 2022) ("*Pharr-San Juan-Alamo*"); *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as revised* (Feb. 14, 2019) ("*Houston*").

## II.

We review both the district court's holding regarding Eleventh Amendment immunity and its grant of summary judgment *de novo*.  *McAllen*, 62 F.4th at 178.

## A.

We begin with the threshold jurisdictional issue.  "The Eleventh Amendment recognizes the background constitutional principle that states, as separate sovereigns, are inherently immune from suit without their consent."  *Id.*  Eleventh Amendment immunity extends to "arms of the state," and we use the "*Clark* factors" to determine whether an entity is an arm of the state:

> (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether it has the right to hold and use property.

*Id*. at 178–79 (citing *Clark v. Tarrant Cnty.*, 798 F.2d 736, 744–45 (5th Cir. 1986)).

*McAllen* largely controls our analysis.  There, we considered whether the McAllen Independent School District was an "arm of the state" for the

3

purposes of the Eleventh Amendment. We extensively cited Texas case law and statutes in concluding that factors one and three weighed in favor of immunity, while the rest cut against immunity. *Id.* at 183–84. For the most part, that analysis applies equally here because Mission is bound by the same Texas case law and statutes as the school district in *McAllen*. We must consider, however, one distinction as to the second factor, the source of the entity's funding.

Mission avers that it depends on the state for roughly 72% of its funding, which is a higher proportion than the "roughly half" that the school district in *McAllen* received from the state. *See id.* at 183. But this slight distinction does not flip the second factor in Mission's favor for two reasons. First, Mission still receives a substantial component of its funding from non-state sources. Second, Mission "maintain[s] the power to levy certain taxes and issue bonds," *id.* at 183–84 (citing Tex. Educ. Code §§ 45.001, 45.002), and "[t]he ability to self-finance weighs heavily against immunity," *id.* at 184 (citing *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 346 (5th Cir. 1998)). Therefore, we discern no reason to deviate from our holding in *McAllen*: Mission is not an arm of the state for the purposes of the Eleventh Amendment, so it is not entitled to immunity. *Id.*; *see also San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 284 (Tex. 1996) (holding that "an independent school district is more like a city or county than it is like an arm of the State of Texas and is amenable to suit in federal court under the Eleventh Amendment").

No. 21-40337

**B.**

We turn to the merits of Springboards' trademark claims. We note that Springboards' briefing in this case is nearly identical to its briefing in *McAllen*, portending a similar result.

The Lanham Act imposes liability on anyone who uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion" without the consent of the holder of the mark. 15 U.S.C. § 1114(1)(a). To succeed on any of its trademark claims, Springboards must establish "a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship" of Mission's reading program. *McAllen*, 62 F.4th at 184 (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1988)).

In some cases, such as this one, the threshold question of the identity of the relevant class of "consumers" is not immediately clear. Springboards contends that the relevant consumers are students, parents, and educators affiliated with Mission. We have repeatedly rejected that argument. *See McAllen*, 62 F.4th at 185; *Pharr-San Juan-Alamo*, 33 F.4th at 750. Rather, as we have held before, the relevant class of consumers is third-party school districts who may be misled into thinking that Mission's reading program is affiliated with Springboards' Campaign. *McAllen*, 62 F.4th at 185.

Ordinarily, with that threshold question answered, we would analyze the "digits of confusion"[2] at this juncture. "We need not parse the

_____

[2] The "digits of confusion" are:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the

5

individual digits here, however, for the practical effect of any conceivable confusion on the sophisticated school districts to which Springboards markets its products is at most exceedingly remote." *Pharr-San Juan-Alamo*, 33 F.4th at 750. In other words, though some of the digits of confusion weigh in Springboards' favor, *see Houston*, 912 F.3d at 814–18, its antecedent error of misidentifying the relevant class of consumers severely weakens the viability of its likelihood of confusion argument because Springboards did not present evidence germane to the relevant class of consumers. "One decisive fact" sounds the death knell of Springboards' case: "[S]ophisticated school-district customers can tell the difference between goods Springboards is selling them and goods and slogans [Mission] is not." *Pharr-San Juan-Alamo*, 33 F.4th at 751.

## III.

For the reasons provided here and in our prior cases, the district court did not err either in concluding that Mission is not entitled to immunity from suit or in granting Mission's motion for summary judgment on the merits.

AFFIRMED.

_____

retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion . . . [and] (8) the degree of care exercised by potential purchasers.

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017) (citation omitted).